### HARVEY & CO. v. DOTY.

Nonsuit—Grain Futures—Rev. Stat., 1859–63.—There is some testimony in this case tending to show that the contracts out of which plaintiffs' claim arises were made with a *bona fide intention* on the part of both parties to the contract to actually deliver the grain in question at the specified time, and hence nonsuit was improper.

Before Watts, J., Fairfield, September, 1896. Reversed.

Action by Wm. P. Harvey & Co. against Wm. R. Doty, for money advanced to defendant for purchase of grain in Chicago. At close of plaintiffs' testimony, defendant's counsel move for a nonsuit upon the following grounds, to wit:

1st. That there is an absolute failure of proof, in that the plaintiffs set up in their complaint that they advanced money for William R. Doty, at his request and for his benefit, to the sum of ⚬ dollars, stated in the complaint. That

there is a failure of any proof on the part of the plaintiffs that the plaintiffs have advanced any money for the defendant at his request.    2d.  That the plaintiffs have failed to prove that at the time of the making of the said sales of corn—which were sales for future delivery—they have failed to prove that they were, at the time of the making of the said contract, the owners or assignees of the said corn, or authorized at the time of the making of the said contract by the owners or assignees thereof.   That they have failed to prove that Doty was the actual owner of any corn at the time of the alleged sale of these 40,000 bushels of corn.   They have failed to prove that they themselves were the owners, or that anybody was the owner.   They have failed to prove that it was the *bona fide* intention of the plaintiffs and defendant, at the time of the making of this contract, that the said corn so sold and transferred should be actually sold in kind by the plaintiffs and actually received in kind by the party contracting to receive the same at the time mentioned in the contract, bargain or agreement.   They have failed to prove any purchase by the plaintiffs or any party who contemplated an actual delivery thereof.   That they have failed to prove such a contract as entitles them to recover upon the sale of corn to be delivered in the future.

The Court: Well, gentlemen, this case here is not without difficulty.   There is no question in my mind at all that it was gambling in futures.   The only trouble with me is, whether there is any testimony at all to go to the jury in this case.   Now, as to the morality of the contract, I have nothing to do with that one way or the other, although I think one of these contracts, dealing in futures, is more pernicious and more hurtful than sitting down and playing poker; for people gambling at a table only hurt themselves, only hurt their own morals and the pockets of each other. But when people speculate in futures—and a great many good people do it and don't seem to think there is any harm—it injures so many innocent people.   But, as said

before, I have got nothing to do with the morals of other people, and there are a great many of the best kind of people who don't seem to think there is any harm in dealing in future contracts. The only question for me is, whether there is any relevant, competent testimony to go to the jury? If there is, then I can't grant a nonsuit. As to the complaint itself: I understand the parties rely on a motion for a nonsuit, and in the event I don't grant that, then they ask that I dismiss the complaint, on the grounds that it doesn't state facts sufficient to constitute a cause of action. The complaint in itself doesn't show any illegal contract. I see no objection to the complaint at all. There is nothing in the pleadings on the part of the plaintiffs to show an illegal contract, but the defendants come in and allege it was a gambling contract, and obnoxious to the statute of South Carolina, as construed by our Supreme Court. And you, Mr. McDonald, in making out your case, have attempted to anticipate the defense as set up by these defendants here, and you have brought out testimony, I think, which amply satisfies me that, according to the Supreme Court, in the case of *Gist* v. *The Western Union Telegraph Company*, that this was a contract obnoxious to the act of the legislature. The testimony here does not satisfy me, and I don't think there is anything to go to the jury on that point, that Mr. Doty ever intended to deliver that corn at all. There is no testimony to show that he was engaged in the corn business, and there is no testimony to show that there was 40,000 bushels of corn in the neighborhood where he lived, or likely to be. That being the case, and relying strictly on that case, *Gist* v. *The Western Union Telegraph Company*, I don't think that this is a contract that could be enforced according to the laws of this State. I think that it is clearly inhibited by the act of 1883, and I don't think there is anything at all that I can submit to that jury to pass on. Admitting everything that has been testified here to be true, it is an illegal contract. I may have overlooked some testimony, and if there is any testi-

mony at all, it ought to go to the jury; but I can't remember any testimony at all that would warrant a jury in finding for the plaintiffs here.

Mr. McDonald: I will state that in the testimony of the plaintiffs it is stated that at the time the contracts were made, it was understood that the corn was actually to be delivered.

The Court: But you would have to go further, and show that when Mr. Doty wrote to them and asked them to make this contract, that it was his intention, and they understood it to be his intention, that he actually was the owner of the property at that time, or had it in possession as assignee, according to the act. The mere fact that he wrote them word to sell the corn, and they did so, thinking he would deliver it, wouldn't bind him, because they would have to think themselves that he had it at the time, and that he intended to deliver it.

Mr. McDonald: As I stated, there are some very nice questions, and I would like to have your Honor's ruling on my position, that we are not suing on such a contract, but for money advanced at his request.

The Court: As I said before, I don't think there is any testimony here which would warrant a jury in finding a verdict for the plaintiffs. The testimony here satisfies me that it was in violation of the act of 1883, that it was an illegal contract. In other words, it was for the future delivery of corn, and that there was no proof to show that there was any intention on the part of the parties that there should be any actual delivery, or that Mr. Doty at that time owned the corn himself, or that he had an interest in that much corn, or that he was in possession of that much corn. I don't think there is any doubt that it is as pure a gambling contract as was ever had, and the testimony in this case shows that they were *particeps criminis*. Now, if Mr. Doty had got into a future contract with somebody else, and had telegraphed his factors to pay that loss, and they paid out that much for losses, the factor could unques-

tionably have recovered. But they placed this contract themselves; knew there was no intent to deliver; nothing to show that he had the corn; nothing to show that he actually intended to ever deliver the corn; nothing to show that he had it in a warehouse up there, or intended to put it there. They placed this contract, and as long as the market went up, they let him stay in; as soon as it goes down, they write him for money; and when he refuses to be bled any further, then they advance the money and sue him for the debt. I think that it would be "whipping the devil around the stump" to hold that this would be a legal contract; and entertaining those views, and in view of the emphatic declarations of the Supreme Court, in *Gist* v. *The Western Union Telegraph Company*, I shall hold the same views until they reverse themselves in that. The motion for a nonsuit is granted.

From this order plaintiff appeals on following exceptions:

I. For that his Honor erred in granting a nonsuit in this case, when there was sufficient evidence adduced to go to the jury upon all of the issues involved in the action.

II. For that his Honor erred in undertaking to decide upon the weight, effect and sufficiency of the testimony adduced in this case, and deciding the same himself, instead of submitting the same to the jury, upon whom alone was devolved by law the right and duty of deciding upon the facts established by the testimony.

III. For that his Honor erred in holding that the testimony satisfied him that the transactions between the plaintiffs and the defendant were "gambling in futures," and in granting a nonsuit on that ground, when, if such a question was properly involved in the case, that was a question of fact that the jury alone had the right to determine.

IV. For that his Honor erred in holding and granting a nonsuit upon the ground that the contract between the plaintiffs and the defendant was a gambling contract, obnoxious to the act of the legislature of 1883, relating to

sales of property for future delivery, when he should have submitted that to the jury, if it was a question properly arising in the case upon the pleadings and the testimony.

V. For that his Honor erred in holding that it was incumbent upon the plaintiffs to show what was the intention of the defendant, when they executed his orders, as his brokers or commission merchants, in buying or selling grain for his account, when the action was brought by plaintiffs for money paid for the use of the defendant, at his request and for his benefit.

VI. For that his Honor erred in holding, and granting a nonsuit upon the ground that the contract between the plaintiffs and the defendant was a "pure gambling contract," and that the testimony showed that the plaintiffs were *particeps criminis*, when that was a question of fact for the jury, if it could be properly raised under the pleadings in the case; and the testimony showed that an actual delivery and receipt was contemplated and called for by the contracts.

VII. For that his Honor erred in deciding from the testimony what was the intention of the parties, when such intention was one of fact, and he should have left it to the jury to say what such intention was, if that was a question properly arising in the case under the pleadings.

VIII. For that his Honor erred in holding, and granting a nonsuit upon the ground, among others, that the case of *Gist* v. *The Western Union Telegraph Company* was applicable to the facts established and proven in this case.

IX. For that his Honor erred in invading and usurping the province and functions of the jury when he held as follows: "As I stated,. I don't think there is any testimony here which would warrant a jury in finding a verdict for the plaintiffs. The testimony here satisfies me that it was in violation of the act of 1883, that it was an illegal contract." When he should have submitted the facts to the jury for their decision.

X. For that his Honor erred in granting a nonsuit, when,

if the act of 1883, relating to sales of property for future delivery, was applicable, there was sufficient testimony to go to the jury to show that, at the time of the sales made by the plaintiffs, it was the *bona fide* intention of the parties to the said contracts to actually deliver and receive the property at the maturity of the contracts.

XI. For that his Honor erred in holding that the act of 1883, relating to sales of property for future delivery, was applicable to the facts proven in this case, when it appeared from the testimony that the plaintiffs were not parties to any such contracts, but were simply the brokers or commission merchants of the defendant, and made contracts with other parties upon the orders of the defendant, and for his account, and in granting a nonsuit upon that ground.

XII. For that his Honor erred in not holding that the plaintiffs, having become the agents and brokers of the defendant, and bought and sold property for him, and at his request, were entitled to recover for all advances made or losses paid by them in the discharge of their duty as such agents and brokers, and in not refusing to grant a nonsuit upon that ground.

XIII. For that his Honor erred in not holding, and refusing to grant a nonsuit upon the ground that if there had been any illegal contract, the plaintiffs were not suing to enforce the same; that if there had been such a contract, it was ended, executed, and terminated; and that if the plaintiffs, in such circumstances, advanced money at the request of the defendant, either express or implied, to pay losses of the defendant upon such contracts, they were entitled to recover the same from the defendant as money paid to his use and at his request.

XIV. For that his Honor erred in not holding, and refusing to grant a nonsuit upon the ground that the only contract between the plaintiffs and the defendant was one of agency; and that the plaintiffs were entitled to recover for all advances made or losses paid by them for the account of the defendant in the execution of such agency.

XV. For that his Honor erred in not holding, and refusing to grant a nonsuit upon the ground that the contract between the plaintiffs and defendant, being one of agency, entitled them to recover from the defendant for all advances made or losses paid by them for the account of the defendant in the execution of their agency, unless they had engaged in illegal transactions; and that, if so, the burden was upon the defendant to establish such illegal transactions.

XVI. For that his Honor violated section 26, of article V., of the Constitution of the State, in undertaking to decide any question of fact, or to judge of the weight or sufficiency of the testimony in this case, when said section provides simply that he "shall declare the law."

XVII. For that his Honor violated section 25, of article I., of the Constitution of the State, by not submitting the facts in the case to the jury for their determination.

*Mr. J. E. McDonald*, for appellant.

*Messrs. Ragsdale & Ragsdale*, contra.

(Arguments substantially same as in preceding case.)

Sept. 30, 1897. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. This is an action to recover a balance due plaintiffs by defendant for money advanced by plaintiffs for defendant at his request, and for his use and benefit. The main defense interposed by defendant is, that plaintiffs' claim is founded upon transactions for the purchase and sale of grain for future delivery, in the market of Chicago, and that at the time such contracts were entered into these plaintiffs were not "the owners or assignors of the said corn, or authorized, at the time of the making of said contracts by the owners or assignors thereof, or their authorized agent, to make or enter into such contracts, and it was not the *bona fide* intention of the plaintiffs and the defendant, at the time of the making of the said contracts, that the said corn so agreed to be sold

and transferred should be actually delivered in kind by the plaintiffs and actually received in kind by the defendant, at the period in the future mentioned and specified in the said contracts, and the same were hence illegal, void, and without effect."

The evidence introduced on the part of the plaintiffs consisted of the testimony of the only two members of the firm who resided in Chicago, where the transactions in question took place; the rules and regulations of the Chicago Board of Trade, at which such transactions were entered into, which seem to have been introduced without objection; the correspondence between the parties, plaintiffs and defendant, both by telegraph and by mail; sundry memoranda of sale and purchase sent to defendant by plaintiffs, and certain slips confirming sales on the Chicago Board of Trade. At the close of the testimony adduced by plaintiffs, the defendant moved for a nonsuit, upon the grounds set out in the "Case," which motion was granted by the Circuit Judge, for the reasons stated by him, and from his judgment to that effect plaintiffs appeal, upon the several grounds set out in the record—all of which grounds for the motion for a nonsuit, reasons for refusing same, and the grounds of appeal, will be incorporated by the reporter in his report of this case.

This being an appeal from an order of nonsuit, upon the ground stated, the only question for this Court is, whether there was a total lack of evidence tending to prove all or any one of the material issues in the case. The question is—*not* whether the evidence is *sufficient* to establish plaintiffs' case, for that is a question solely for the jury, and we have no right or disposition to invade their province—but solely whether there was *any* evidence tending to prove plaintiffs' case. The first ground of the motion for a nonsuit is, that there was no evidence tending to show that the plaintiffs ever advanced any money for the defendant at his request. This is conclusively disposed of by the testimony of both of the plaintiffs who were examined as

witnesses, who say that they did make the advances alleged in the complaint for the defendant at his instance and request, only a portion of which has been repaid to them by defendant, leaving a balance still due, for which judgment is demanded. The first ground of the motion for a nonsuit cannot, therefore, be sustained; and, indeed, we do not understand that the Circuit Judge based his conclusion upon that ground.

The main controversy is as to the second ground upon which the Circuit Judge did base his conclusion. There can be no doubt that the transactions out of which plaintiffs' claim arose, and upon which it is founded, were transactions for the sale and purchase of grain for future delivery. Indeed, this does not seem to be questioned in this case. It must, therefore, be controlled by the provisions of the act of 1883, incorporated in the Revised Statutes of 1893 as sections 1859–1863. The terms of this statute and the proper construction to be given to it have been so recently considered and determined in the recent cases of *Gist* v. *Telegraph Co.*, 45 S. C., 344, and *Riordan & Co.* v. *Doty*, mss. decision filed 30th day of September, 1897, that we do not deem it necessary to go over the same ground here, but simply to refer to those cases as expressive of our views upon the subject. The last mentioned case is very much like the present, and is decisive of all the questions presented by this appeal, except the single question whether, in this case, there was *any* evidence tending to show all or either of the three facts essential to the plaintiffs' recovery in a case like this. So that the only question necessary to be considered in this case is whether there was *any* evidence tending to show all or either of those essential facts—*not*, as we repeat, whether the evidence was *sufficient* to establish all or either of those facts; for as to that we do not wish to be regarded as intimating any opinion, as that is a question exclusively for the jury, who must decide it untrammeled by anything that we might say. After a careful examination of the testimony in this case, we feel bound to say that there is, at least, *some*

evidence tending to show that the contracts, out of which plaintiffs' claim arises, were made with a *bona fide* intention on the part of both parties to the contracts, at the time of making the same, that the grain purchased and sold should be actually delivered in kind at the period in the future specified in such contracts. The allegations of the answer to the contrary are explicitly and emphatically denied by both of the plaintiffs, who were examined as witnesses, and both of these witnesses affirmatively testify that such was the intention of both parties to the contracts at the time they were entered into—the memoranda of sales and purchases furnished to defendant by plaintiffs, at the time such transactions were entered into, contain a statement that "all transactions made by us on the board of trade contemplate the actual receipt and delivery of the property and payment therefor;" and the rules of the Chicago Board of Trade, introduced in evidence, without objection, declare that all transactions of the kind made at the board shall be made on the same understanding. We cannot say, therefore, that there was *no* evidence tending to establish one of the facts which, under the provisions of the statute, would prevent a contract for the purchase or sale of grain for future delivery from being void. This being so, there was error in granting the motion for nonsuit solely on the ground stated.

The judgment of this Court is, that the judgment of nonsuit be reversed, and that the case be remanded to the Circuit Court for a new trial.